# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| MARK MURRAY, | § | |
| *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:21-CV-00012 |
| PATSY STENGEL AND DCBC SERVICES LLC/MICHELLE RITCHIE DBA DIAMONDS COSMETOLOGY COLLEGE AND DIAMONDS BARBER COLLEGE | § § § § § § § § | Judge Mazzant |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant DCBC Services LLC/Michelle Ritchie's ("DCBC" or "Ritchie") Motion to Vacate Default Judgment (Dkt. #16). Having considered the motion and the relevant pleadings, the Court finds Defendant's motion should be **GRANTED**.

### BACKGROUND

This case arises out of Mark Murray's ("Murray") termination from Diamonds Cosmetology College and Diamonds Barber College ("Diamonds"). Murray worked as a licensed barber at Diamonds beginning on February 4, 2019. Prior to Murray's full-time employment at Diamonds, he worked on a trial basis. According to Murray, he attempted to shorten his work schedule from four days per week to two days per week in April 2019. Murray was given a response to his request on April 17, 2019, when Murray claims his supervisor, Patsy Stengel ("Stengel"), told him to go home because she "really [wouldn't] need [Plaintiff] with [the new instructor] back now" (Dkt. #1 at p. 5). Murray's employment at Diamonds ceased on April 18, 2019.

On May 19, 2019, a month after Murray's termination, Stengel and Ritchie entered into an asset purchase agreement under which Ritchie bought all the assets of Diamonds (Dkt. #19-2 at p. 1). This agreement also included an indemnity clause indicating that, for events occurring prior to the closing date, Ritchie would not "assume nor be liable for any liabilities incident or related to the [a]ssets or the [b]usiness or for any liabilities related or incident to [Diamonds'] entity or business operations" (Dkt. #19-2 at p. 2).

On January 6, 2021, Murray filed his Complaint (Dkt. #1) and issued a summons to Defendants. On January 12, 2021, the summons were returned as executed. Both Defendants were served January 8, 2021, with answers due January 29, 2021. On March 2, 2021, after Defendants had filed no answers, Murray requested the Clerk enter default against the Defendants. The Clerk subsequently entered default against all Defendants. On June 22, 2021, the Court entered a Memorandum Opinion and Order granting Murray's request for default judgment (Dkt. #10).

On July 7, 2021, Stengel filed her Motion to Vacate Default Judgment (Dkt. #11), which the Court granted on September 15, 2021 (Dkt. #15). Because Ritchie had still not appeared, the vacated judgment applied only to Stengel. Then, on September 28, 2021, Ritchie made her first appearance, filing her Motion to Vacate Default Judgment (Dkt. #16). Murray responded on October 12, 2021 (Dkt. #18). Ritchie filed her reply on October 12, 2021 (Dkt. #19).

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." FED. R. CIV. P. 55(c). Rule 60(b) enumerates five specific reasons relief may be granted—it also contains a sixth catch-all category. *See* FED. R. CIV. P. 60(b). The decision to grant or deny relief under Rule 60(b)

is subject to the Court's discretion, and the Court's determination is entitled to deference. *See Frew v. Janek*, 820 F.3d 715, 719 (5th Cir. 2016) (citations omitted).

"[F]ederal courts should not be agnostic with respect to the entry of default judgments, which are generally disfavored in the law and thus should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). "Thus, where there are no intervening equities any doubt should, as a general proposition, be resolved in favor of the movant to the end of securing a trial upon the merits." *Id.*

## ANALYSIS

Ritchie asks the Court to vacate its Memorandum Opinion and Order granting Murray's request for default judgment (Dkt. #10). In support of this request, Ritchie provides five reasons the default judgment should be vacated: (1) "[s]etting aside the entry of default in this case will not prejudice [Murray]"; (2) Ritchie has a meritorious defense; (3) Ritchie's "failure to answer was not willful or the result of inexcusable neglect"; (4) Ritchie "acted expeditiously to correct the default"; and (5) "a default judgment would cause a harsh or unfair result" (Dkt. #16 at pp. 2–4).

Murray responds that the default should not be set aside. According to Murray, DCBC's actions resulted from inexcusable neglect. Further, Murray asserts that DCBC failed to meet her burden in showing that: (1) "vacating the entry of default will not prejudice [Murray"; and (2) DCBC "has a meritorious defense" (Dkt. #18 at pp. 3–5).

### A. Rule 60(b)'s Standard for Vacating a Final Judgment

As a threshold matter, a district court may set aside a final judgment under either Federal Rule of Civil Procedure 55(c) or Federal Rule of Civil Procedure 60(b). *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 (5th Cir. 1992). Federal Rule of Civil Procedure 55(c) permits

3

a court to set aside an entry of default for good cause, FED. R. CIV. P. 55(c), whereas 60(b) allows a Court to "relieve a party . . . from a final judgment, order, or proceeding" in one of six enumerated circumstances. FED. R. CIV. P. (60(b)). Only one of the circumstances is relevant in the present action: a court may set aside a final judgment upon a finding of "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). However, in determining whether to set aside a default judgment "[u]nder either rule [55(c) or 60(b)], we examine the same factors: whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *CJC Holdings*, 979 F.2d at 64 (citing *United States v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985)).

The Fifth Circuit applies Rule 60(b) "most liberally to judgments in default . . . [because] . . . [t]runcated proceedings of this sort are not favored. . . . Thus, unless it appears that no injustice was done by the judgment, the equities in such cases will militate strongly in favor of relief." *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1459 (5th Cir. 1992) (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981)). The aforementioned factors "are not 'talismanic' and the court may consider other factors[,] including whether the motion was made within a reasonable time, whether the interests in deciding the case outweighs the interest in the finality of the judgment, whether the public interest is implicated, and the amount of money at stake." *Owens-Illinois, Inc. v. T & N Ltd.*, 191 F.R.D. 522, 526 (E.D. Tex. 2000) (first citing *Hibernia Nat'l Bank v. Administracion Central Sociedad*, 776 F.2d 1277, 1280 (5th Cir.1985); then citing *Seven Elves*, 635 F.2d at 402–03).

The Court will address each factor in turn.

1. **Whether Default was Willful**

"When the Defendant's negligence was at least a partial cause of its failure to respond, it has the burden of convincing the court its negligence was excusable." *Owens-Illinois*, 191 F.R.D. at 527 (citing *Rogers*, 167 F.3d at 939). "The Court is justified in refusing to relieve the defendant from a default judgment resulting from its failure to establish 'minimum internal procedural safeguards.'" *Id.* (citing *Rogers*, 167 F.3d at 939).

Ritchie asserts that her "failure to answer was not willful or the result of inexcusable neglect" (Dkt. #16 at p. 3). In support of this contention, Ritchie explains that she "is not a lawyer and has little understanding of legal matters" (Dkt. #16 at pp. 3–4). According to Ritchie, she assumed she had no liability because Ritchie had purchased Diamond's assets after the alleged conduct occurred and Stengel had agreed to indemnify her in such a circumstance (Dkt. #16 at pp. 3–4). Ritchie admitted that she believed Stengel was handling the matter until she received the Court's Order vacating Murray's default judgment against Stengel (Dkt. #16 at p. 4). It was only then that Ritchie contacted an attorney (Dkt. #16 at p. 4).

Murray responds that these contentions are "disingenuous" and Ritchie's actual conduct amounts to inexcusable neglect (Dkt. #18 at pp. 2–3). He specifically alleges there is no indication that Ritchie ever spoke to Stengel about this matter (Dkt. #18 at pp. 2–3). Thus, he claims Ritchie cannot assert that she thought Stengel was handling the matter when Ritchie never communicated with her (Dkt. #18 at p. 3). Further, after she was served with the summons and complaint, Ritchie mailed Murray's representation "a letter stating in substance she was not responsible because she allegedly did not purchase any liabilities when she acquired Diamonds" (Dkt. #18 at p. 3). Because Ritchie relied on no one when she wrote and sent this letter, Murray appears to indicate that Ritchie should have had no issue answering the complaint (Dkt. #18 at p. 3).

The Court agrees that Ritchie's neglect was "at least a partial cause of [her] failure to respond." *Owens-Illinois*, 191 F.R.D. at 527. Had Ritchie spoken with Stengel at some point or contacted an attorney for guidance, an appearance might have been made on her behalf. Rather, Ritchie assumed Stengel was handling the matter, despite no confirmation of such assumption. While the Court acknowledges that Ritchie is not well-versed in legal procedures, "'[i]gnorance of the rules is not enough, nor is ignorance of the law.'" *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985) (quoting 11 Wright & Miller, *Federal Practice and Procedure* § 2858 at 170 (footnotes omitted)).

In the present case, the breakdown in communication began with Ritchie and Stengel, neither of whom directly contacted an attorney for legal advice. Further, there is no indication that Ritchie ever spoke with Stengel to ensure she was handling the matter. Consequently, the Court finds this factor weighs against vacating the default judgment.[1]

## 2. Extent of Prejudice to Murray

Regarding the second factor, Ritchie contends that no prejudice will result to Murray if the default judgment is set aside because "[m]ere delay does not constitute prejudice" (Dkt. #18 at p. 2). Murray does not indicate how vacating the default judgment will result in any prejudice to him. Murray simply asserts that, because Ritchie has admitted she is not a lawyer and thus has limited knowledge of legal matters, "Ritchie is not competent to claim . . . that Plaintiff will not be prejudiced" (Dkt. #18 at p. 4). Additionally, Murray points to Ritchie's statements as conclusory and notes that "[t]he affidavit in support of the motion to vacate a default judgment must contain

---

[1] Importantly, however, because Ritchie's actions qualify as no more than mere negligence, the Court finds Murray's argument of willfulness unavailing. *In re OCA, Inc.*, 551 F.3d 359, 370, n.32 (5th Cir. 2008) ("A *willful default* is an 'intentional failure' to respond to litigation." (quoting *Lacy*, 227 F.3d at 292)).

6

more than sworn conclusory statements" (Dkt. #18 at p. 4) (citing *Sony Corp. v. Elm State Elecs. Inc.*, 800 F.2d 317, 320–24 (2d Cir. 1986)).

"If the plaintiff will suffer prejudice by reopening the action, the court may deny the movant's motion for relief." *Owens-Illinois*, 191 F.R.D. at 526 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). However, "[t]he prejudice must involve more than the mere possibility of prejudice from delay inherent in every case." *Id.* (citing *Hibernia Nat'l Bank*, 776 F.2d at 1280). "Likewise, delay in the collection of a judgment by a plaintiff or requiring a plaintiff to litigate the merits of the claim is insufficient prejudice to allow a default judgment to stand." *Id*. (citing *One Parcel of Real Prop.*, 763 F.2d at 183).

As indicated above, Murray in no way specifies how prejudice will result from the Court vacating the default judgment. Murray has not suggested how Ritchie's delayed participation has caused, or how vacating the default judgment would cause, "the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Lacy*, 227 F.3d at 293 (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)). Because Murray makes no such showing, and because the record is devoid of any other sign of prejudice, the Court finds this factor weighs in favor of setting aside the default judgment.

### 3. Merits of Ritchie's Asserted Defense

Next, the Court considers the merits of Ritchie's asserted defense. Ritchie asserts that, as a defense to the allegations contained within Murray's Complaint, Murray "was not terminated based on his age or the fact that he was a male" (Dkt. #16 at p. 3). Ritchie instead claims that Murray was terminated because he "simply stopped showing up for work" (Dkt. #16 at p. 3).

Murray again offers no substantive response to Ritchie's contention. Rather, Murray simply states that "Ritchie is not competent to claim she has a meritorious defense" because she is

7

not a lawyer and has admitted to having only a limited understanding of legal matters (Dkt. #18 at p. 4).

Murray alleges three causes of action: (1) violations of 29 U.S.C. § 623, *et seq.* (Age Discrimination in Employment Act of 1967, "ADEA"), as amended; (2) violations of 42 U.S.C. § 2000e, *et seq.* (Title VII of the Civil Rights Act of 1964, "Title VII"), as amended; and (3) violations of the Texas Labor Code § 21.051, *et seq.* (for both age and sex discrimination). To determine whether Ritchie has proffered a meritorious defense to the claims alleged, the Court must turn to each of the asserted causes of action and what Murray must prove for them, respectively.

All of Murray's claims utilize the *McDonnell Douglas* framework. *See Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 466 (5th Cir. 2021) (noting that Title VII and the Texas Labor Code § 21.051 are governed by the *McDonnell Douglas* burden-shifting framework); *see also Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (applying the *McDonnell Douglas* framework to an ADEA claim). "Under *McDonnell Douglas*, the plaintiff has the initial burden to establish a prima facie case of [discrimination]." *Lindsley*, 984 F.3d at 466. Upon satisfaction of that burden, the employer must "provide a legitimate, nondiscriminatory reason for terminating employment" *Miller*, 716 F.3d at 144. "If the employer satisfies this burden, the burden shifts back to the employee to prove either that the employer's proffered reason was not true—but was instead a pretext for age [or sex] discrimination—or that, even if the employer's reason is true, he was terminated because of his age [or sex]." *Id.*; *see Wittmer v. Phillips 66 Co.*, 304 F. Supp. 3d 627, 633 (S.D. Tex. 2018) (utilizing *McDonnell Douglas* for a Title VII action brought for discrimination on the basis of sex).

After consideration of the foregoing, the Court finds Ritchie "has presented a meritorious defense by proffering a legitimate, nondiscriminatory justification," *Lacy*, 227 F.3d at 293, for terminating Murray—namely, Murray's "numerous and extended unexcused absences from work" (Dkt. #16 at p. 3). Further, Ritchie has asserted that Murray's "position was assumed by another male barber instructor," and "during the time of [Murray's] employment, the College employed persons older than [Murray]" (Dkt. #16 at p. 3). Thus, Ritchie has "presented an adequate defense to set aside the default judgment," *Lacy*, 227 F.3d at 294, and, accordingly, the Court finds this factor weighs in favor of Ritchie.

### 4. Other Factors

As noted previously, the Court may consider other factors when determining whether to set aside a default judgment, including: (1) "whether the motion was made within a reasonable time"; (2) "whether the interest in deciding the case outweighs the interest in the finality of the judgment"; (3) "whether the public interest is implicated"; and (4) "the amount of money at stake." *Owens-Illinois*, 191 F.R.D. at 526.

#### a. Motion Made Within a Reasonable Time

"In deciding a motion to set aside a default, a court may consider whether the defendant acted expeditiously to correct its default." *Id.* at 529 (citing *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992)). Under Rule 60(c), "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons under 60(b)(1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1).

The Court issued its Order granting default on June 22, 2021 (Dkt. #10). Ritchie filed the present motion on September 28, 2021—nearly three months after entry of the Order. However, according to Ritchie, she acted expeditiously as soon as she "became aware of the September 15,

2021[] Order indicating that DCBC Services LLC/Michelle Ritchie [was] not considered in Stengel's motion to vacate judgment and [was] considered to have still not appeared" (Dkt. #16 at p. 4).

A review of the record demonstrates that Ritchie could have corrected the entry of default with greater expedition. Even so, Ritchie obtained counsel and filed a motion to vacate before the damages hearing on Murray's default judgment, which supports a finding that the motion to vacate was made within a reasonable time. Three months is also significantly less than the one-year timeframe allowed under Rule 60(c)(1). Thus, the Court finds that Ritchie filed the present motion in an attempt to correct her default within a reasonable time, and this factor therefore falls in favor of setting aside the default judgment.

b. **Interests in Deciding Case Outweighs Interest in Finality**

The Court recognizes that a "great desirability" exists in "preserving the principle of the finality of judgments." *Seven Elves*, 635 F.2d at 402. However, under the facts of the present case, the Court finds that the interest in deciding the case outweighs the interest in the finality of judgments. Murray has alleged discrimination on the basis of age and sex against Ritchie. Such accusations are serious, and a liability finding on such claims should not be left to a default judgment under the relevant facts. Further, Ritchie presents a meritorious defense that should be considered before a liability finding is reached. As such, this factor supports vacating the default judgment.

c. **Whether Public Interest is Implicated**

The parties do not present, and the Court does not find, any indication that the public interest is implicated by either upholding or vacating the default judgment against Ritchie. Rather,

this case implicates, presumably, only the interests of the parties involved in the litigation. This factor therefore weighs against setting aside the default judgment.

### d. Amount of Money at Stake

The Court, in entering default judgment, noted that a hearing would be necessary to determine the appropriate amount of damages to be awarded to Murray (*see* Dkt. #10 at p. 9). In the Order, the Court determined that the amount Murray seeks "is not 'a liquidated sum' nor an amount 'capable of mathematical calculation'" (Dkt. #10 at p. 9) (quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citations omitted)). Because the amount of damages has not yet been determined, the Court finds this factor neutral.

The Court, having weighed the facts of this case, finds that Murray will not be prejudiced by vacating the default judgment and that Ritchie has presented meritorious defenses to Murray's Complaint. While Ritchie's failure to participate in the case was due, at least in part, to her neglect, Ritchie sought counsel and filed a motion to vacate upon receiving the Court's Order vacating default as against Stengel—but not as against Ritchie. Thus, Ritchie's neglect, while present, is not "inexcusable." While the amount in controversy is undetermined, and the public has no real interest in the case, the nature of the allegations supports finding a greater interest exists in deciding the case on the merits rather than allowing for liability on default alone.

## CONCLUSION

It is therefore **ORDERED** that Defendant DCBC Services LLC/Michelle Ritchie's Motion to Vacate Default Judgment (Dkt. #16) is hereby **GRANTED**.

It is further **ORDERED** that the Memorandum Opinion and Order granting Default Judgment (Dkt. #10) is **VACATED** as to **Defendant DCBC Services LLC/Michelle Ritchie**.

**IT IS SO ORDERED.**

**SIGNED this 15th day of November, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE